Haluk Savci, Esq.
Tamir W. Rosenblum, Esq.
MASON TENDERS DISTRICT
COUNCIL OF GREATER NEW YORK
520 Eighth Avenue, Suite 650
New York, New York 10018
(212) 452-9451

Counsel for Respondents

SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                           :

AURORA CONTRACTORS, INC.,               :

                       Petitioner,       :             20 CV 6072 (LGS)

                                             :

      - against -                            :

CONSTRUCTION & GENERAL BUILDING    :        **Declaration of Haluk**
LABORERS, LOCAL 79,                      :        **Savci, Esq.**

                                             :

                      Respondent.      :

                                             :
-----------------------------------------------------------------X

I , HALUK SAVCI, hereby declare:

1.      I am a member of the Bar of this Court and counsel for Respondent in the above-entitled

action and am familiar with all the facts and circumstances of this action.

2.      I make this declaration in support of Respondent Construction & General Building

Laborers Local 79 ("Local 79") reply in opposition to Aurora Contractors, Inc. ("Aurora" or

"Petitioner") petition to stay Local 79's arbitration brought under Aurora's collective bargaining

agreement the Mason Tenders District Council of Greater New York and Long Island .

3.      The Mason Tenders District Council of Greater New York and Long Island (the

"MTDC" or the "Union") is a labor organization within the meaning of Section 301 of the Taft-

Hartley Act (29 USC § 185) which represents employers in an industry affecting commerce as

defined in Section 501 of the Taft-Hartley Act (29 USC § 142) and enters into collective

bargaining agreements with employers on behalf of its constituent local unions including Local

79. The MTDC maintains its principal place of business at 520 8th Avenue, Suite 650, New

York, NY 10018.

4.      Aurora is a contractor located at 100 Raynor Avenue, Ronkonkoma, New York 11779.

Aurora through its Vice-President Joseph Koslow executed a 2002-2005 Master Independent

Collective Bargaining Agreement with the MTDC (the "2002-2005 CBA"). (Attached hereto as

Ex. 1). That Agreement among other things contains an arbitration provision at Article X (1)

which specifies that "[t]he Union may submit disputes arising between the parties involving

questions of interpretation or application of any clause of this Agreement (or previous

Agreement to which the Employer was subject) as a grievance." *Id.*

5.      The 2002-2005 CBA further contains an evergreen provision at Article XII which reads

as follows:

> "This Agreement shall become effective and binding upon the parties hereto on
> the first day of July 2002, and remain in full effect through June 30, 2005,and
> shall renew from year to year thereafter unless either party hereto shall give
> written notice to the other of its desire to modify, amend, or terminate this
> Agreement. Such notice must be given in writing delivered by certified mail,
> postage prepaid, at least sixty days, but not more than ninety days, before the
> expiration date of this Agreement. In the event either party gives written notice of
> its desire to terminate, modify or amend the Agreement pursuant to this Article,
> the Agreement, with the exception of any and all prohibitions contained herein on
> the right to strike, shall remain in effect past the expiration date and the conditions
> established by the Agreement maintained until such time as impasse is reached
> and declared as defined under the National Labor Relations Act." *Id.*

6.      In or around March 2020, a dispute developed on a jobsite located at 333 Johnson

Avenue in Brooklyn, New York where Local 79 business agents learned that Aurora had

subcontracted demolition work covered under the 2002-2005 Agreement to an entity – Alba

Demolition- which did not have an agreement with the MTDC in violation of the subcontracting

clause of the 2002-2005 Agreement at Article 2 (1).

7.      Petitioner's counsel on May 12, 2015 letter (Attached hereto as Ex. 2) forwarded a

regular mail (and not certified return receipt as specified under Article XII) letter purportedly

terminating the CBA  but which did not comply with the terms of Article XII.  The notice was

received outside the specific notice period which under Article XII is at least sixty days, but not

more than ninety days before the expiration date of the Agreement or June 30, 2015. Petitioner's

counsel claimed that this letter corrected an earlier termination letter mailed by regular mail (and

not certified return receipt as specified in Article XII) on April 30, 2015. Ex. 3.   This letter

purportedly terminated the 2014-2017 Agreement of ABZ Contracting, Inc. (a company

unrelated to Aurora), not with the MTDC and Local 79, but with a different entity, General

Building Laborers Local 66.

8.      Having rejected Petitioner's contention that it terminated its CBA with Local 79 in

accordance with the evergreen provision, Local 79 forwarded to Petitioner on July 1, 2020 a

grievance alleging its violation of the subcontracting provision of the CBA in its hiring of a non-

signatory contractor. Ex.4.  On July 14, 2020, the MTDC legal department then sent Petitioner a

notice of intent to arbitrate the dispute identified in the grievance forwarded to Aurora by the

Local 79 on July 1.Ex. 5.

9.      On August 4, 2020, Aurora filed the instant Petition to stay the arbitration.

I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge and belief.

Dated: New York, NY
       August 14, 2020              /S/

           By:     Haluk Savci, Esq.
                    Counsel for Plaintiffs
                    Associate General Counsel
                    Mason Tenders District
                    Council of Greater NY
                    520 Eighth Avenue, Suite 650
                    New York, NY 10018

# EXHIBIT 1



100 Raynor Avenue
Ronkonkoma NY 11779
Federal Tax Id: 11-2638171

Aurora Contractors Inc.
100 Raynor Avenue
Ronkonkoma NY 11779
Federal Tax Id 11-2638171

# MASON TENDERS DISTRICT COUNCIL

# OF GREATER NEW YORK

# MASTER INDEPENDENT

# COLLECTIVE BARGAINING

# AGREEMENT

# 2002 - 2005

# INDEPENDENT
## COLLECTIVE BARGAINING AGREEMENT

This Collective Bargaining Agreement (hereinafter "Agreement") is entered into by and between the undersigned EMPLOYER (hereinafter "Employer") and the MASON TENDERS DISTRICT COUNCIL OF GREATER NEW YORK, affiliated with the Laborers' International Union of North America, (hereinafter "Union"), for itself and its constituent Local Unions Numbers 78 and 79.

## ARTICLE I

**Section 1.—**

The Union claims and has shown proof, and the Employer acknowledges and agrees, that a majority of its employees have authorized the Union to represent them in collective bargaining. The Employer hereby recognizes the Union as the exclusive bargaining representative under Section 9(a) of the National Labor Relations Act for all employees of the Employer who perform work covered by this Agreement on all present and future job sites.

**Section 2.-**

This Agreement is effective on all jobs in Greater New York City within its established boundaries.

**Section 3.-**

When the Employer performs any work outside of the established boundaries of Greater New York City, the Employer shall abide by the terms and conditions of the applicable Agreement in that area to which a subordinate Union of the Laborers' International Union of North America is a party. If no Agreement exists, the Employer shall abide by the applicable terms and conditions established between the Employers and a union affiliate of the Laborers' International Union of North America in that area.

## ARTICLE II

**Section 1.—**

The Employer shall not enter into a contract with any other person, firm, partnership, corporation or joint venture employing Mason Tenders to perform bargaining unit work as defined in Article IV of this Agreement on the same job site, unless such other person, firm, partnership, corporation or joint venture is bound by an Agreement with the Union.

1

**Section 2.—**

If the Employer contracts out or sublets any of the work coming within the jurisdiction of the Union as defined in Article IV, the Employer shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

**Section 3.—**

The Employer shall not subcontract any cleaning work and/or removal work of any type or kind as defined in Article IV of this Agreement.

**Section 4.—**

The Employer agrees that it will not subcontract any work covered by this Agreement, or enter into any other agreement or arrangement, in order to circumvent the payment of wages and fringe benefits and the working conditions provided for in this Agreement. The Employer and the Union hereby agree to the elimination of lumping.

**Section 5.—**

If the Employer or any owner or principal forms or acquires by purchase, merger or otherwise an interest, whether by ownership, stock, equitable or managerial, in another company performing bargaining unit work within this jurisdiction, this Agreement shall cover such other operation and such other bargaining unit employees shall be considered an accretion to the bargaining unit.

**Section 6.—**

If the Employer or any owner or principal forms or acquires by purchase, merger or otherwise an interest, whether by ownership, stock, equitable or managerial, in another company performing bargaining unit work within this jurisdiction, this Agreement shall cover such other operation and the Employer and such other company shall be jointly and severally liable for each other's obligations under this Agreement.

**Section 7.—**

Once an award is made by the Employer to a subcontractor, then the Employer shall not permit the re-subcontracting of the same award to another subcontractor.

**Section 8.—**

All of the terms, covenants and conditions of this Agreement, and without limitation, the specific provisions of this Article, shall be applicable for the duration and during the entire term of this Agreement, regard-

less of any change in the status of the Employer, as for example, the Employer joining, during the term of this Agreement, any Association with whom the Union has an agreement.

**Section 9.—**

In order to protect and preserve, for the Mason Tenders covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work set forth in Article IV of this Agreement, under its own name or under the name of another, as a person, company, corporation, partnership, or any other business entity, including joint venture and sole proprietorship, wherein the Employer exercises either directly or indirectly any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work: (a) where the two enterprises have substantially similar management, business purpose, operation, equipment, customers, supervision and/or ownership; or (b) where there exists between the Employer and such other business entity, interrelation of operations, common management, centralized control of labor relations and/or common ownership. In determining the existence of the aforementioned criteria, the presence of the requisite control or commonality at any level of management shall be deemed to satisfy those criteria. Should the Employer establish or maintain such other entity within the meaning of this Section, the Employer is further under an affirmative obligation to notify the Union of the existence and nature of the work performed by such other entity and the nature and extent of its relationship to the Employer.

**Section 10.—**

The Employer shall not have the right to enter into any contract involving subletting except as herein provided.

**Section 11.—**

If the Employer accepts a contract or subcontract solely for work as described in Article IV of this Agreement, the Employer must perform all such work with the Employer's own Mason Tenders and such contract or subcontract shall not be sublet. However, if the Employer has a general contract, the Employer may sublet such work to a contractor or subcontractor who is a signatory to or bound by an Agreement with the Union. Notice of the subletting of work described in Article IV of this Agreement on any project shall be given to the Union before any persons are employed on such project. Such notice shall give the location of the project and the name and address of the Owner, Contractor and Subcontractor.

## ARTICLE III

### Section 1.—

**a)** It shall be a condition of employment that all employees of the Employer who perform work covered by Article IV of this Agreement shall become and remain members in good standing of the Union and shall pay uniform initiation and agency fees on or after the eighth day following the date of execution of this Agreement, or after the eighth day following the beginning of covered employment. The Union agrees that all employees will be accepted to membership on its roster of eligible laborers on the same terms and conditions generally applicable to other members or laborers on its roster of eligible laborers and, further, that the Employer will not be requested to discharge an employee for reasons other than such employee's failure to tender the periodic dues or fees uniformly required.

**b)** The Local Union shall have the right to collect a reasonable fee for inclusion on the roster of eligible laborers from all persons who are not members in good standing of the Union or are not tendering uniform initiation and agency fees uniformly required. Said fee shall be collected to cover the reasonable cost of maintaining the roster of eligible laborers. At the earliest date permitted by law, a person who has paid such fee to be included on the roster of eligible laborers and is referred to an Employer shall tender to the Union upon acceptance for employment by the Employer the uniform initiation and agency fees uniformly required.

**c)** The Employer agrees to discharge, upon receiving seven days written notice, signed by the Secretary Treasurer of the Union, any employee with respect to whom such notice may state that such employee has failed to tender uniform initiation and agency fees uniformly required, provided that said written notice is also provided to said employee and that said employee has not paid the required initiation and agency fees within seven days of the date of the written notice.

### Section 2.—

**a)** The Employer shall notify the Union by facsimile transmission of all jobs for which it is the successful bidder, as soon as the Employer is notified of its successful bid. The Employer shall, at least 48 hours prior to commencement of a job, notify the Union by facsimile transmission of the job. The Employer shall notify the Union, by facsimile transmission, at least 48 hours in advance of any subcontractor commencing work on that job site. The Employer shall, on forty-eight hours' notice, advise the Union when it needs employees, giving all of the pertinent data to the Union with respect to the type of work so as to afford the

4

Union opportunity to refer applicants for such vacancies, it being understood that the Employer shall hire whomsoever he or it sees fit, and that the Employer shall at all times be the sole judge as to the work to be performed and whether such work performed by the employees is or is not satisfactory. It is further understood that the Employer shall not discharge or reject a Shop Steward appointed by a Local Union without written consent from the Local Union.

**b)** The first Mason Tender on any job site shall be selected by the Employer. The second Mason Tender on a job site shall be a Shop Steward appointed by the Union. Commencing with the third Mason Tender on a job site, 50% of all Mason Tenders shall be furnished and referred by the Union to the Employer from the roster of eligible laborers and 50% shall be selected by the Employer. The fifth Mason Tender on the site and each fifth Mason Tender on the site thereafter, (i.e. fifth, tenth, fifteenth and so on), shall be an apprentice. All Mason Tenders to be assigned work as bell ringers shall be referred by the Union. All Mason Tenders hired by the Employer shall be listed on the roster of eligible laborers. The roster of eligible laborers maintained by the Union shall be based upon seniority, ability, length of unemployment, and other uniform criteria adopted by the Union consistent with applicable law.

**c)** If the Employer is serving as a paymaster on a job site, the following provisions shall supercede any lesser provisions of this Agreement:

**i.** The first Mason Tender on that job site shall be a Shop Steward selected by the Union, the second Mason Tender on the job shall be a Foreman selected by the Employer, and commencing with the third Mason Tender on the job site, 100% of Mason Tenders shall be furnished and referred by the Union to the Employer from the roster of eligible laborers, without limitation to the above referenced provisions regarding the referral of apprentices. All Mason Tenders hired by the Employer shall be listed on the roster of eligible laborers, as described in Article III, Section 2(b). Further, the Shop Steward shall be provided the first opportunity to work any overtime that is available.

**ii.** A Shop Steward shall be employed to tend the trades when work of any other kind is being performed at the site.

**iii.** The Employer acknowledges and agrees that it and the entity for which it is serving as a paymaster are joint employers and one another's agents for all work performed at the site. The companies in the paymaster relationship shall be jointly and severally liable for all violations of this Agreement and/or applicable law committed by either,

5

whether acting independently or in concert, including but not limited to any action taken by either in violation of the provisions of this Agreement prohibiting the subcontract of on site work to entities not bound to a collective bargaining agreement with the Union.

        **iv.**    The Union reserves the right to exercise all lawful means to obtain recognition and/or a signed collective bargaining agreement from any employer at a job site that is not bound to an Agreement with the Union.

        **v.**    In the event the Employer on two occasions fails to provide the Union with notice of a job as required by Section 2(a) of this Article, on all future jobs the first Mason Tender on any job site shall be selected by the Employer. The second Mason Tender on a job site shall be a Shop Steward appointed by the Union. Commencing with the third Mason Tender on a job site, 100% of all Mason Tenders shall be furnished and referred by the Union to the Employer from the roster of eligible laborers. All Mason Tenders hired by the Employer shall be listed on the roster of eligible laborers.

        **e)**    There shall be a Joint Apprenticeship Training Committee ("JATC") charged with direction of the Apprentices. The Employer agrees to and shall be bound by all terms and conditions of the JATC documents creating the JATC and by any rules or by-laws adopted by the JATC, as they may be amended from time to time. Further, effective July 1, 2003, or at such time as the Union determines in its sole discretion thereafter, the Union shall have the authority to implement a Mandatory Apprenticeship Program pursuant to which all Mason Tenders on any job shall either be credited as journeymen by the JATC, or designated and enrolled as Apprentices in the JATC administered program. The Employer hereby agrees to abide by all rules and regulations and amendments thereto, of the Union and the JATC concerning the implementation and maintenance of the Mandatory Apprenticeship Program: To the extent that any rules and regulations and the employment of apprentices of the JATC or of Mandatory Apprenticeship Program contradict the terms of this Agreement, the terms of the JATC documents and Mandatory Apprenticeship Program shall be fully incorporated herein and shall control.

        **f)**    The Employer shall have the absolute right to reject any job applicant or applicants referred by the Local Union, with the exception of the Shop Steward, who can only be rejected pursuant to the procedure set forth in subsection 2 (a) of this Article III. In the event of such rejection, the Local Union will refer another applicant or applicants to the Employer.

        **g)**    In the event that any applicable statute is enacted or any decision rendered by a court or administrative agency having jurisdiction thereof, which statute or decision permits union security or hiring provisions more favorable to the Union than those contained herein, then the parties hereto shall meet and amend this Agreement so as to give the Union the maximum benefits permitted by such statute or decision.

        **h)**    There are certain existing mutual understandings among the Mason Tenders, Concrete Workers and Lathers, respectively, which apply to the Borough of Richmond and which shall be considered part of this Agreement. Accordingly, the Employer agrees that in the Borough of Richmond the handling of Lathers materials and the tending of Plasterers is the work of the Mason Tenders. Wage rates and the rate of contributions for the performance of such work shall be the rates provided under this Agreement.

**Section 3:**

    The Employer agrees that there will be no discrimination against any employee or applicant for employment, with respect to race, creed, color, national origin, religion, concerted activity, sex, age, handicap, marital status, sexual orientation, affectional preference, veteran status or union membership in all employment decisions, including but not limited to recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, layoff and termination, and all other terms and conditions of employment.

    The preceding shall not be construed, however, to waive any procedural or substantive rights of employees under otherwise applicable law.

**ARTICLE IV**

**Section 1.—**

    The Employer shall exclusively employ Mason Tenders to perform the following work:

        **a)**    Unloading of materials to fence in a job site or the cleaning and sweeping of sidewalks or their maintenance, or the erection and maintenance of safety equipment, barricades and flags, used by all trades, from the inception of the job to its completion.

        **b)**    Jacking up of trailer offices or the erection and disman-

tling of shanties on the job site, as well as maintaining and cleaning such structures, or the opening and closing of gates, windows and all other points of ingress or egress on the job.

**c)** Installation and maintenance of temporary heat in trailers, shanties, or temporary toilet facilities on the job site, or the heating of masonry materials for installation during the winter.

**d)** Installation and maintenance of fire preventive equipment, including fire extinguishers on the job site; as well as the conduct of fire and/or safety watch.

**e)** Assist the Project Engineers at the inception of the job to perform the routine marking of locations for the placement of temporary facilities and signs.

**f)** Tending Masons or Bricklayers on construction jobs of every nature and description including bridges, tunnels and sewer jobs.

**g)** Mixing and placing concrete in the foundations for masonry bearing walls and foundations for structural steel, frame, or stone buildings, according to the International Union ruling of January 28, 1948.

**h)** Do rough concrete of the cellar floor to the underside of the finished concrete cellar floor, except where reinforcing is used.

**i)** Wheel or carry of materials in or about the job (construction, reconstruction, remodeling or alteration) or assist in the preparation of traditional and newly developed masonry materials to be used by mechanics, whether such preparation is by hand or by other process, or supply, convey, stock pile, clean, load or unload material which has not otherwise been awarded to other trades, whether by hand or any other mechanical device, including the operation of fork lifts when used at levels not in excess of nine feet.

**j)** Clean or scrape mortar or plaster or spackle or debris of any kind or type from windows, door bucks, window frames, or do rough cleaning only (except the cleaning in connection with the removal of protection) of porcelain and china bath fixtures or clean floors or refuse and deposit in chute or in trucks until the building is completed; it is agreed, however, that removal of the debris resulting from the cleaning and removal of protection from the porcelain and china bath fixtures is the work of the Mason Tenders.

8

**k)** Moving, placing, removing, installing, maintaining and stocking of temporary sheeting of floors or runways or scaffolds for use of Bricklayers and Mason Tenders or any other employees on the job site or help  carpenters on handling and erection of fences and all protection work on the job site, and the application, maintenance and removal of all protective materials (grease, paper and tape, etc.) used to protect finished surfaces of elevators, door bucks, window frames, doors etc., during construction, (except the protective materials applied prior to delivery to the job site). It is agreed, however, that the removal of debris resulting from the removal of protective materials applied prior to delivery to the job site is the work of the Mason Tender. When any material other than wood is used for perimeter protection, i.e. cables, pipe, etc., the installation and removal of said material is the work of Mason Tenders.

**l)** Erect or remove scaffolds and runways for the use of Bricklayers, Masons or Mason Tenders, or any other employees on the job site, or erect or remove runways for the placing of concrete in accordance with Paragraph (g) or erect or remove planking on all scaffolds.

**m)** Hanging centers for the use of Bricklayers, where hollow tile or brick arches are used, and pour rough concrete on Republic or Kahn Arches.

**n)** Work hand pumps for all work covered by this Agreement when the Employer elects to do the pumping by hand.

**o)** Operate mortar or concrete mixers other than those driven by steam or compressed air, for work covered by this Agreement.

**p)** Operate pumps not driven by steam or compressed air for all work covered by this Agreement, except where five or more pumps are being used on any one operation.

**q)** Alteration work, including but not limited to the removal of partitions, ceilings, walls, all floors, floor coverings, fixtures, reinforced concrete floors, and ducts, any of which are not to be re-used, and the removal of walls which have been erected by Bricklayers or Plasterers.

**r)** Cleaning and removal of all combinations of masonry rubbish in remodeling or alteration work.

**s)** Cutting or opening walls of any thickness.

**t)** Mason Tenders shall strip all forms and cut concrete, whether performed by hand or machine, when Mason Tenders pour con-

9

crete.

**u)**    Placing steel forms, wooden forms, or any other forms for concrete foundations where said work has been awarded to Mason Tenders.

**v)**    Loading or unloading materials for Bricklayers and materials for Mason Tenders to and from trucks at the job site, except that the driver may assist such loading and unloading.

**w)**    The tearing down of work, chopping and removal of all debris on all alteration or remodeling projects.

**x)**    If any party to this Agreement uses salamanders, stoves or other heating equipment which uses solid (coal, coke etc.) or liquid (kerosene, LPG, etc.) fuel for the sole protection against the weather of Masonry or concrete work installed under this Agreement in conjunction with canvas or plastic covers over open spaces to permit the continuation of work on the job site, the Mason Tenders shall install and maintain the canvas and plastic coverings and shall unload, place, maintain and tend the salamanders, stoves and other heating equipment. The tending of salamanders and other heating equipment shall be the exclusive work of the Mason Tenders. Any temporary heat of any kind provided on the job site to permit the continuation of work by all trades and personnel employed on the job site shall be the exclusive work of the Mason Tenders from the inception to the completion of the job. If any party to this Agreement provides temporary heat that uses natural gas as a combustant supplied to salamanders which have been adapted to accept natural gas and/or provides natural gas salamanders or other heating equipment to be installed by others, Mason Tenders shall be used exclusively to perform this work. Mason Tender work shall include, but not be limited to, all unloading, all stockpiling, and all handling and distribution of salamanders and other heating equipment to the location of installation (it being understood that all unloading, stockpiling, and handling would be under employer supervision and employer discretion based on job conditions); any incidental handling or relocating of salamanders already installed to permit the proper distribution of heat and the continuance of work by Mason Tenders or others on the job; any fire watch or emergency service necessary to insure the safe and continual maintenance of temporary heat and the safety for the public or other employees on the job site. All such work performed between midnight Sunday and midnight Friday shall be compensated at straight time rates if the Mason Tender has been employed on a regular shift of eight consecutive hours. All work in excess of such eight hour shift or during the weekend period, midnight Friday through midnight Sunday, and on stipulated holidays shall be com-

10

pensated at time and one-half. Coke and oil fired salamanders shall have a minimum of two men at all times where five or more of these types are used.

**y)**    Mason Tender shall be employed as bell ringers on material hoists. There shall be two Mason Tenders so assigned. One shall be stationed at the bottom of the hoist and the other Mason Tender on the floor where work is in progress. Mason Tenders shall assist in loading or unloading all material onto and from the hoist and shall be in sole charge of signaling the engineer for hoisting such materials, when necessary, whether by bell, radio or other methods, and shall be in absolute control of the signaling rope for raising or lowering the hoist from floor to floor.

**z)**    Mason Tenders shall also continue to do all the work which they have performed in the past.

**aa)**    Tending and assisting the erection, construction or installation of precast or prefabricated masonry panels.

**bb)**    All cleaning and removal of debris, rubbish and refuse of any type and kind for all trades on all jobs.

**cc)**    Final construction cleaning operation on any construction project or part thereof before the project or any part thereof is turned over to the owner.

**dd)**    Unloading, handling and assisting in the setting of precast sills and coping where mechanical equipment is not used.

**ee)**    Opening and closing of a construction site for the purpose of providing access to the job site or work areas for personnel, deliveries of material, equipment and machinery. This work shall include, but not be limited to, the opening and closing of all fences, gates, chains, temporary doors, barricades, barriers or other devices used to control general access. Mason Tenders shall be responsible for the flagging of all trades and the public.

**ff)**    any punch list work traditionally performed by Mason Tenders and the use of tools in connection with the performance of such work.

**gg)**    all mixing, handling of material, clean up work, demolition and tending of masons, on exterior restoration jobs, including, but not limited to, work on two-point scaffolding.

11

hh)    Mason Tenders shall be employed to tend the trades when work of any other kind is being performed at the site.

## Section 2.—

The Employer shall exclusively employ Mason Tenders to perform the following work:

The removal, abatement, encapsulation or decontamination of asbestos, lead or other toxic or hazardous waste or materials which work shall include, but not be limited to: the erection, moving, servicing, operation, and dismantling of all enclosures, scaffolding, barricades, decons, negative air machines; vacuum trucks, blasting and scraping equipment, chemicals and chemical applying equipment, and any other tools, equipment or materials used in the removal, abatement, encapsulation or decontamination of asbestos, lead or other toxic or hazardous waste or materials, as well as the servicing and operation of tools and performance of all work related to the sorting, labeling, bagging, cartoning, crating, packaging and movement of such asbestos, lead or other toxic or hazardous waste or materials for disposal; the movement and/or transportation and disposal of such asbestos, lead or other toxic or hazardous waste or materials to any authorized disposal site; the clean up of the work site and all other work and stand-by time incidental to the removal, abatement, encapsulation or decontamination of such asbestos, lead or other toxic or hazardous waste or materials; and the performance of safety watch duties.

## Section 3.—

The Employer shall exclusively employ Mason Tenders to perform the following work:

Complete and total demolition (wrecking), including the dismantling, remodeling or alterations of entire buildings or structures, in whole or in part, of any size, type (reinforced concrete, structural steel, wall bearing, wood), or purpose (commercial, non-commercial, residential, industrial, institutional, transportation), or the complete and total demolition (wrecking) of any portion of all buildings or structures. This work shall include, but not be limited to, the following:

a)    all manual work involving the tearing down, breaking away, disposal of, and/or removal from, the job site of any and all building materials, whether debris or salvaged materials, used in the construction of all buildings or structures (concrete, terra cotta, brick, mortar, plaster, structural and ornamental lumber, roofing materials of any type, natural or manufactured stone, ornamental iron, lath, reinforcing rods,

floors and flooring materials), and structural components (wood, steel or beams of any material);

b)    the complete removal of one or more stories from a building or structure when said building or structure is to be shortened in height; the gutting of the interior of a building or structure by the removal of a partition and/or flooring; cutting and opening walls of any thickness, the demolition of any wall or walls of any building or structure, regardless of whether and/or where the walls are to be rebuilt, the removal of partitions and arches, or parts thereof, from one or more floors in any building, or structure, which is being renovated or remodeled; the removal of brick or concrete walls or walls to be rebuilt in their original position; and the removal of concrete walls which are to be rebuilt in a different position for the purpose of shortening the length or width of a building when said brick or concrete walls are to be rebuilt;

c)    the breaking away, cleaning and removal of all masonry and wood or metal fixtures for salvage or scrap; all hooking and signaling when materials for salvage or scrap are removed by crane or derrick; all loading and unloading of materials carried away from the site of wrecking; all cleaning, storing, stockpiling or handling of materials; all tearing down of work, removal of all debris, clean-up, burning, back-filling and landscaping of the site of the wrecked structure, the use of torch, air and gas;

d)    the use of any and all tools and/or equipment necessary to perform this work including, without limitation, shovels, picks, bars, hammers, sledge hammers, chisels, electrically and pneumatically operated hand tools (jack hammers, all saws and cutting tools, including reciprocating and Skill saws, chipping guns, drills, spaders, etc.);

e)    the use of all manually operated equipment used to raise, lower, or hoist any and all equipment, tools or materials used to perform this work or to remove any and all debris or salvaged materials; all cutting of any metal material, salvage or debris on the job site, whether by manual, mechanical, or the use of acetylene and oxygen burning equipment;

f)    any and all hazard protection work used to protect Mason Tender employees, equipment, tools and materials and other employees on the job site, and/or the public from any damage or injury, or threat thereof, resulting from the performance of any of the work in this paragraph;

g)    lead abatement or removal in conjunction with complete

12

13

demolition. It is understood that any employee working on a lead abatement or removal site shall be certified by the Union in order to perform such work.

**h)** all work involving the providing of temporary heat of any kind for any purpose for the continuance of Mason Tenders to work on the job;

**i)** all foul weather protection to permit the continuance of work for Mason Tenders or other employees on the job site, to include the removal of ice and snow, when necessary on the job;

**j)** the cleaning and maintaining of all sidewalks, bridges, and public access areas;

**k)** cleaning and maintaining of fire escapes, chimneys, catwalks, elevators, elevator shafts, windows, air conditioners, elevated sewage tanks on roofs, water tower tanks, gas tanks;

**l)** all work involving the erection, maintaining, and dismantling of all scaffolding, planking and runways, including for the use of demolition used by all trades, or built for other trades, including the unloading and removal of all scaffolding, planking and runway material on and off the job;

**m)** removal of all or any portion of a roof in which structural change is to occur. Structural change is defined as removal of structural slabs, steel members, concrete members and penetration through the structural slab. Total demolition shall also include complete demolition (wrecking) or dismantling of entire buildings or structures, in whole, in part of any facet thereof (provided that the roof is removed as part of any partial demolition or dismantling), of any size, type (reinforced concrete, structural steel, wall bearing wood) or purpose (commercial, noncommercial, municipal, residential, industrial, institutional, transportation);

**n)** elevated bridges, highways, train platforms, structures, water towers and gas tanks;

**o)** erect or remove planking, scaffolds, and runways for the use of demolition, or anyone else on the job site;

**p)** lead abatement or removal in conjunction with total demolition. It is understood that any employee working on a lead abatement or removal site shall be certified by the Union in order to perform such work;

14

**q)** construction and removal of chutes, bridges and patented scaffolds; and

**r)** Mason Tenders shall also continue to perform all other work traditionally performed for Employers by members of former LIUNA Local 95.

**Section 4 –**
The Employer shall exclusively employ Mason Tenders to perform all work traditionally assigned by the Employer to plasterer's helpers, including but not limited to:

**a)** the gathering up and removal from the interior of the building of all refuse from lath, plaster, mortar and fireproofing;

**b)** all handling, mixing, and application of plaster and fireproofing;

**c)** all hanging of canvas, tarpaulins and protection for plastering and fireproofing;

**d)** all building of scaffolding, manlifts and equipment necessary to level to do work;

**e)** all starting, stopping, minor repairs and maintenance of mixers, plaster and spray fireproofing machines and all related equipment;

**f)** all pipe and hose installation as necessary to place plaster and spray fireproofing material to location needed;

**g)** the assistance in and handling of the thin coat and joint finish systems shall be performed by Mason Tenders at the Employer's option and selection, unless there are four or more Plasterers. At such time it shall be mandatory to employ at least one (1) Mason Tender;

**h)** where ceilings are white plaster finish over brown mortar or treated concrete, the ratio shall be one (1) Mason Tender to four (4) Plasterers. The Mason Tenders shall slake and carry lime and water, supply plaster, build, shift and remove scaffolds; and perform all other duties required by the Employer as time will permit. The provisions of this paragraph will not apply to any other work;

**i)** when plastered or fireproofed surfaces are to be replas-

15

tered or reinsulated, the hacking or removal of same (in preparation of the new application) shall be the work of the Mason Tenders;

**j)** receiving, unloading, hoisting, spreading and general handling of all interior materials and supplies of any and all description used in interior lathing by lathers in the assembling, installation and erection by any and all methods;

**k)** building of required scaffolding in preparation of lathing; and

**l)** Mason Tenders shall continue to perform all other work traditionally performed for Employers by members of former LIUNA Local 30.

**Section 5.—**
The term "Mason Tender" as used in this Agreement includes all employees who perform work as described in Article IV of this Agreement and any other work awarded or assigned to the Union by agreement, award or act of the Laborers' International Union of North America or the AFL-CIO.

**Section 6.—**
If any other labor organization bound to the New York Plan for the Settlement of Jurisdiction Disputes (the "New York Plan") claims jurisdiction over any work required by this Agreement to be performed by Mason Tenders, the Employer agrees to follow and be bound by the resolution under the New York Plan, if submitted thereto by one of the affected unions. Pending the resolution of the dispute, the Employer shall assign Mason Tenders to perform the work in question.

**ARTICLE V**

**Section 1.—**
The regular hours of employment are from 7 A.M. to 4 P.M., exclusive of the noon hour, from Monday to Friday inclusive, during which time Mason Tenders shall be paid for a minimum of eight-hours. However, this shall not prevent the Laborers engaged in tending the hoist from starting in the morning ten minutes before the regular hour so as to permit Bricklayers to start at the proper starting time. The same consideration shall be allowed to these Laborers at quitting time. Five minutes shall be allowed to Laborers before 1 P.M. for tempering of mortar left in the tubs during the noon hour. The same consideration shall be given to these laborers at quitting time.

16

With advance written notice to the Union, the Employer may, with the Union's permission, work a minimum seven hour day on a job between the hours of 8 A.M. and 4 P.M., exclusive of lunch, in which event overtime shall be paid after seven hours. Any job for which consent to work a seven-hour day is granted shall work under such schedule for the duration of the job.

**Section 2. –**
The following days shall be known as Holidays on which there shall be no performance of any work:
Sundays, New Year's Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day.

**Section 3.—**
No work shall be performed on any of the days listed in Section 2 or as provided in Article VI Section 2(a) unless in each instance written permission is first obtained from the Union.

**Section 4.—**
The Employer and the Union agree it to be their declared policy that the period for lunch shall, as nearly as possible, be uniform with that established with the other trades.

**ARTICLE VI**

**Section 1.—**
**a)** Effective July 1, 2002, the wages of Mason Tenders shall be $26.55 per hour during regular working hours.

Subject to the Union's right of allocation/reallocation as hereinafter provided in this section, and effective January 1, 2003, wages and/or fringe benefit contributions shall be increased by $0.80 per hour.

Subject to the Union's right of allocation/reallocation as hereinafter provided in this section, and effective July 1, 2003, wages and/or fringe benefit contributions shall be increased by $0.80 per hour.

Subject to the Union's right of allocation/reallocation as hereinafter provided in this section, and effective January 1, 2004, wages and/or fringe benefit contributions shall be increased by $0.80 per hour.

Subject to the Union's right of allocation/reallocation as hereinafter provided in this section, and effective July 1, 2004, wages and/or fringe benefit contributions shall be increased by $0.80 per hour.

Subject to the Union's right of allocation/reallocation as hereinafter provided in this section, and effective January 1, 2005, wages and/or fringe benefit contributions shall be increased by $0.80 per hour.

17

The Union, in its sole and absolute discretion, reserves the right to allocate and/or reallocate any portion of the foregoing increases to any of the fringe benefit funds, as well as the right to reallocate any of the amounts currently allocated to wages or to the fringe benefit funds as set forth in this Article.

The rate for Foremen (including Asbestos Supervisors) and for Assistant Foremen shall be $35.00 per day and $25.00 per day, respectively, above the prescribed rate for Mason Tenders.

**b)**     Whenever an hourly rate in excess of the wage rate provided for in Article VI, Section 1(a) hereof is paid on any job to any Mason Tenders other than Foremen or Assistant Foremen, the highest hourly rate of wages shall be the rate of wages for all Mason Tenders on such job from the date such excess rate was paid to any such Mason Tender to the date of completion of such job.

**Section 2.—**
**a)**     Except as specified in Article IV, Section 1(x), all work performed outside of the regular hours of 7 A.M. to 4 P.M. or in excess of the regular eight hours per day, or on Saturdays shall be paid for at the rate of time and one-half.  All work performed during lunch hour, Sundays and on the following legal holidays: New Year's Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, shall be paid for at the rate of double time. The date that the City of New York observes any of the above-referenced holidays shall be the contract Holiday in the event it is different from the date on which the Holiday actually falls.

**b)**     When it is not possible to conduct alteration work during regular working hours in a building occupied by tenants, said work may proceed on a straight time basis (unless overtime provisions other than those relating to the regular eight-hour day apply) with advance notice to and written consent of the Union.  In the event such consent is granted, Mason Tenders shall work a minimum of eight hours, and shall receive an hour differential for all time worked (i.e. no Mason Tender shall be paid, including contributions to the Mason Tenders Fringe Benefit Funds, for less than nine hours, and if over eight hours are worked, pay and contribution to the Fringe Benefit Funds shall be made for such time worked, plus an additional hour). In addition, all time worked over eight hours in any twenty-four hour period shall be considered overtime. All such approved shifts outside the regular hours shall be for a minimum of five (5) consecutive days.

18

In the event the job is working on a pre-approved seven-hour day pursuant to Article V Section 1 above and written consent to work outside the regular hours is granted, the preceding provision shall be based on such a seven hour, rather than eight-hour, mandatory schedule.

**Section 3.—**
The Employer shall deduct one dollar and ten cents ($1.10) per hour, plus any additional sum per hour hereafter specified by the Union, as dues from the wages of all Mason Tenders who authorize such deduction in writing and then promptly pay over such sums to the Mason Tenders District Council not later than one week after said deduction. The sum transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose working dues check-offs are being paid and the number of hours each Mason Tender has been paid.

**Section 4.—**
Effective July 1, 2002 and subject to the Union's right to allocate and/or reallocate as provided in Section 1, subdivision (a) of this Article, the Employer shall pay weekly to the Trustees of the Mason Tenders District Council Welfare Fund $3.25 per hour for all hours worked by Mason Tenders, Mason Tender Foremen and Mason Tender Assistant Foremen, for the purpose of providing benefits for death, accident, health, medical and surgical care, hospitalization and other such forms of group benefits for Mason Tenders, their spouses, and their eligible children, as the Trustees, in their sole and absolute discretion, may determine and, in addition, out of said monies the Trustees of the Welfare Fund shall provide coverage to conform with the New York State Disability Insurance Law for all Mason Tenders for the period of this Trade Agreement, the cost of which shall be borne by such Welfare Fund.  It is the intention of the parties that no contributions shall be required on the premium portion of wages.

Welfare coverage shall also be provided for all eligible employees of the Mason Tenders District Council, its constituent Local Unions and the Mason Tenders District Council Fringe Benefit Funds provided contributions are made to the Welfare Fund on their behalves in the same amounts as are paid by other Employers.

**Section 5.—**
Effective July 1, 2002 and subject to the Union's right to allocate and/or reallocate as provided in Section 1, subdivision (a) of this Article, the Employer shall pay weekly to the Trustees of the Mason Tenders District Council Pension Fund $4.82 per hour for all hours worked by Mason Tenders, Mason Tender Foremen and Mason Tender Assistant

19

Foremen. Contributions to the Pension Fund shall be utilized for the purpose of providing Pension and other Benefits for the eligible Mason Tenders as the Trustees, in their sole and absolute discretion, may determine. It is the intention of the parties that no contributions shall be required on the premium portion of wages.

Pension coverage shall also be provided for all eligible employees of the Mason Tenders District Council, its constituent Local Unions and the Masons Tenders District Council Fringe Benefits Funds, provided contributions are made to the Pension Fund on their behalves in the same amounts as are paid by other Employers.

**Section 6.—**
Effective July 1, 2002 and subject to the Union's right to allocate and/or reallocate as provided in Section 1, subdivision (a) of this Article, the Employer shall pay weekly to the Trustees of the Mason Tenders District Council Annuity Fund $5.00 per hour for all hours worked by Mason Tenders, Mason Tender Foremen and Mason Tender Assistant Foremen. Contributions to the Annuity Fund shall be utilized for the purpose of providing annuity and other benefits to eligible Mason Tenders as the Trustees, in their sole and absolute discretion, may determine. It is the intention of the Parties that no contributions shall be required on the premium portion of wages.

Annuity Fund coverage shall also be provided for all eligible employees of the Mason Tenders District Council, its constituent Local Unions and the Mason Tenders District Council Fringe Benefits Funds, provided contributions are made to the Annuity Fund on their behalves in the same amounts as are paid by other Employers.

**Section 7.—**
Effective July 1, 2002 and subject to the Union's right to allocate and/or reallocate as provided in Section 1, subdivision (a) of this Article, the Employer shall pay weekly to the Mason Tenders District Council of New York Mason Tender Training Program Fund $.32 per hour for all hours worked by Mason Tenders, Mason Tender Foremen and Mason Tender Assistant Foremen. Contributions to the Training Program shall be used for the purpose of providing education and training in various aspects of the work of Mason Tenders. It is the intention of the parties that no contributions shall be required on the premium portion of wages.

**Section 8.—**
The Employer agrees to deduct and transmit to the Mason Tenders District Council Political Action Committee ("MTDCPAC") $0.10, or such other amount as the Union may determine, for each hour worked

from the wages of those employees who have voluntarily authorized such contributions on the forms provided for that purpose by the Union. These transmittals shall occur weekly, and shall be accompanied by a list of the names of those employees for whom such deductions have been made, and the amount deducted for each such employee.

**Section 9.—**
Effective July 1, 2002 and subject to the Union's right to allocate and/or reallocate as provided in Section 1, subdivision (a) of this Article, the Employer shall pay weekly to the authorized agent of the New York State Laborers-Employers Cooperation and Education Trust Fund $.10 per hour for all hours worked by Mason Tenders, Mason Tender Foremen and Mason Tender Assistant Foremen. It is the intention of the Parties that no contribution shall be required on the premium portion of wages.

**Section 10.—**
Effective July 1, 2002 and subject to the Union's right to allocate and/or reallocate as provided in Section 1, subdivision (a) of this Article, the Employer shall pay weekly to the authorized agent of the Greater New York Laborers-Employers Cooperation and Education Trust Fund (GNY LECET) $.35 per hour for all hours worked by Mason Tenders, Mason Tender Foremen and Mason Tender Assistant Foremen. It is the intention of the Parties that no contributions shall be required on the premium portion of wages.

**Section 11.—**
Effective July 1, 2002 and subject to the Union's right to allocate and/or reallocate as provided in Section 1, subdivision (a) of this Article, the Employer shall pay weekly to the authorized agent of the New York State Health and Safety Trust Fund $.05 per hour for all hours worked by Mason Tenders, Mason Tender Foremen and Mason Tender Assistant Foremen. It is the intention of the Parties that no contributions shall be required on the premium portion of wages.

**Section 12.—**
Effective July 1, 2002 and subject to the Union's right to allocate and/or reallocate as provided in Section 1, subdivision (a) of this Article, the Employer shall pay weekly to the authorized agent of the Mason Tenders Laborers' Supplementary Fund (the "L Fund"), $1.00 per hour for all hours worked by Mason Tenders, Mason Tender Foremen and Mason Tender Assistant Foremen. It is the intention of the Parties that no contribution shall be required on the premium portion of wages.

**Section 13. –**
Effective July 1, 2002, the Employer will contribute $0.25 per

hour for each hour of employment of Mason Tenders directly to the Industry Advancement Funds ("IAFs") designated by the Union in Schedule A hereto, subject to the Union's right to reallocate such monies between participating IAFs. The Union shall have no obligation or responsibility for the collection of these contributions. If, at the sole discretion of the Mason Tenders Fringe Benefit Funds, such monies are collected by Fringe Benefit Funds for forwarding to the IAFs, an administrative fee will be collected by the Funds for such services.

**Section 14.—**

a)     The Employer shall post and maintain a bond to ensure payment of contributions to the Fringe Benefit Funds set forth in this Article of the Agreement and remittance of dues checkoffs and MTDC-PAC contributions to the Union. The minimum amount of the bond shall be fifty thousand dollars ($50,000). The required amount of the bond shall increase based on the number of hours of work performed by the Mason Tender employees of the Employer in any twelve-month period, pursuant to the following schedule.

| Number of Mason Tender Hours | Minimum Bond |
| --- | --- |
| 35,000 to 49,999 | $70,000.00 |
| 50,000 to 74,499 | $100,000.00 |
| 75,000 to 99,999 | $130,000.00 |
| 100,000 or more | $150,000.00 |

The Union may withdraw Mason Tenders from any job in the event the Employer fails to immediately post and maintain a bond in accordance with the provisions of this section of the Agreement.

b)     In the event a deficiency should be determined by an audit of the Employer's books and records, the Union in its sole and absolute discretion may require the Employer to post and maintain a bond in the amount of twice the audited deficiency within 60 days of receiving notice from the Union of the requirement to post and maintain such a bond.

c)     In lieu of a bond or as a supplement to a bond, an Employer may, at the sole discretion and upon the sole consent of the Trustees of the Mason Tenders District Council Trust Funds, furnish cash and/or collateral alternatives in satisfaction of this bonding requirement. The Mason Tenders District Council of Greater New York may, in its absolute discretion, require an additional increase in the amount of the bond posted by an Employer.

d)     Each joint venturer shall furnish the Union with a rider

from its respective surety company, confirming that its respective Bond protects the Union and the Mason Tenders District Council Trust Funds during the period of the joint venture.

e)     In the event the Trustees receive payment either on a bond or through forfeiture of a certificate of deposit or collateral alternative under this Section 14 and said payment is insufficient to satisfy the entire deficiency in the payment of contributions to the Fringe Benefit Funds set forth in this Article of the Agreement and in remittance of dues checkoffs and MTDCPAC contributions to the Union, then the Trustees shall make a *pro rata* payment to each of the Fringe Benefit Funds set forth in this Article of the Agreement and to the Union in an amount equivalent to the percentage of the total deficiency received by the Trustees through forfeiture of the bond or the certificate of deposit or collateral alternative.

**Section 15.—**

a)     The Employer shall make payment of all wages due in lawful currency, except those Employers making payment by check as per Section 16 of this Article. Payments shall be made in sealed envelopes and plainly marked, showing Employer's name and address (printed or stamped), Mason Tender's name, hours worked, amount earned and deductions required by law, and the net amount due.

b)     Wages shall be due and payable during working hours on Thursday or Friday for work done up to the preceding Tuesday. The day selected as the first payday on any job shall be the designated pay date until the completion of the job. Should Thursday or Friday be a bank holiday, wages shall be due and payable not later than Wednesday, for work done up to quitting time the preceding Monday. On jobs where the "Stagger System" is used the Employer shall give due notice to those Mason Tenders affected as to the time the paymaster will be at the job.

c)     Where Mason Tenders are not on the job for any reason for which the Employer is not responsible when the paymaster is paying the men, they may be sent to the main office for their pay but without any allowance for the time spent in going to and from the office; but where the men are not on the job because of any reason for which the Employer is responsible, they will be allowed one hour with pay in going to the office for their pay. Where Mason Tenders are not paid on the specified payday during working hours, they shall be paid single time for all waiting time at the rate of eight hours per day not to exceed twenty-one hours.

d)     When a Mason Tender is discharged, the Mason Tender must be notified during working hours and must be paid on the job imme-

diately.  A violation of this rule entitles a Mason Tender to compensation at the rate provided in Section 1 of this Article for the working time that elapses between the date of discharge and the date the Mason Tender receives such payment.  Such payment shall not exceed 21 hours pay but shall additionally include, in the event of a willful failure to pay, the sum of $100.00 per day for each and every day from date of discharge until payment is received by the Mason Tender, including the date of such receipt.  Employees must be given termination notice of the State of New York Department of Labor, Division of Placement and Unemployment Insurance, when discharged.  If this notice cannot be given to the employee on the job at the time of discharge, the Employer may mail the notice to the employee on the next full business day and this shall be deemed substantial compliance.

**e)**  All Mason Tenders discharged between the hours of 7 A.M. and 12 o'clock noon shall be paid until 12 o'clock noon on the date of discharge.  All Mason Tenders discharged between the hours of 1 P.M. and 4 P.M. shall be paid until 4 P.M.  This does not apply to a layoff and does not apply to a Mason Tender who is discharged on the day on which he is first employed.  Nor does it apply to Mason Tenders not on the job at starting time.

**f)**  Should work be stopped for any cause beyond the control of either party to this Agreement, no claim for lapsed time shall be made for the time of the unavoidable cessation of work.  If the Mason Tenders demand their wages for the working time due, these wages shall be paid within three banking hours after the demand is made upon the Employer.

**g)**  The Union may withdraw Mason Tenders from any job to enforce payment of wages or of contributions to the Trust Funds set forth in this Article of the Agreement, or to enforce the Employer's obligations under Section 14(a) and Section 17, subsections (a) and (b) of this Article.  The Union may also withdraw Mason Tenders to enforce the requirement of the Agreement that Union dues and MTDCPAC contributions be deducted from the wages of Mason Tenders or to enforce payment to the Union of Union dues or MTDCPAC contributions already deducted from the wages of Mason Tenders.

**h)**  If Mason Tenders are withdrawn from any job to enforce payment of wages or of contributions to the Trust Funds set forth in this Article of the Agreement, or to enforce the requirement of the Agreement that union dues or MTDCPAC contributions be deducted from the wages of Mason Tenders, or to enforce payment to the Union of Union dues or MTDCPAC contributions already deducted, or to enforce bonding require-

24

ments or requirements that books and records be provided for audit, the Mason Tenders who are affected by such stoppage of work shall be paid by the Employer for lost time provided that two days' notice of the intention to remove Mason Tenders from a job is given to the Employer by the Union by registered or certified mail.

**i)**  The Employer agrees to and shall be bound by all terms and conditions of the Trust Agreement creating the Trust Funds set forth in this Article of the Agreement and by any rules, regulations or By-Laws adopted by the Trustees of the Funds to regulate said Funds, as they may be amended from time to time, except to the extent any Funds' document contradicts the terms of this Agreement.

**j)**  Payments by Employers to Trustees of the Trust Funds set forth in this Article of the Agreement shall be accompanied by reports furnished by the Trustees of the respective Funds, in such form and containing such data as the Trustees may from time to time determine in their discretion to be necessary.

**Section 16.—**
Notwithstanding anything herein contained, the Employer shall have the right to make weekly payments of wages by check provided:

**1.)**  All legal requirements are complied with;
**2.)**  Written notice by registered mail shall first have been given to the Mason Tenders District Council;
**3.)**  Delivery of checks to Mason Tenders shall be at least one day preceding a banking day;
**4.)**  Checks indicate hours worked and the rate of pay in accordance with the provisions of this Agreement;
**5.)**  The check and the check stub bear the imprint and address of the signatory Employer;
**6.)**  Checks reflect the amount deducted for Dues Check-off and MTDCPAC contributions in accordance with the provisions of this Agreement.

In the event that a salary check is not honored by the bank on which drawn for any reason whatsoever, then the Mason Tender affected thereby shall be entitled to two days' extra pay for waiting time.

**Section 17.—**
**a)**  The books and records of the Employer shall be made available at all reasonable times for inspection and audit by the accountants or other representatives of the Trust Funds set forth in this Article of the Agreement and/or the Union's authorized representatives, including,

25

without limitation, all payroll sheets, W-2 forms, New York State Employment Reports, Insurance Company Reports and supporting checks, ledgers, general ledger, cash disbursement ledger, vouchers, equipment leases, 1099 forms, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, and any other items concerning payroll(s). In addition, the aforementioned books and records of any affiliate, subsidiary, alter ego, joint venture, successor or related company of the Employer shall also be made available at all reasonable times for inspection and audit by the accountants of the Trust Funds set forth in this Article of the Agreement. The Employer shall retain, for a minimum period of six years, payroll and related records necessary for the conduct of a proper audit in order that a duly designated representative of the Trustees may make periodic review to confirm that contributions owed pursuant to this Agreement are paid in full.

**b)**  In the event, after the Trustees have made a reasonable request, the Employer fails to produce its books and records necessary for a proper audit, the Trustees, in their sole discretion, may determine that the Employer's monthly hours subject to contributions for each month of the requested audit period are the highest number of employee hours for any month during the last twelve months' audited, or during the last twelve months for which reports were filed, whichever monthly number of hours is greater. Such determination by the Trustees shall constitute presumptive evidence of delinquency. Prior to making such determination, the Trustees shall mail a final seven day written notice to the Employer advising him that such determination shall be made if the Employer does not schedule a prompt audit. Nothing herein shall mean that the Funds relinquish their right to commence legal proceedings to compel an examination of the Employer's books and records for audit.

**c)**  The Union may withdraw Mason Tenders from any job to enforce the Employer's obligations under subsections (a) and (b) of this section.

**d)**  If after an audit of its books and records the Employer is found to be substantially delinquent, as defined herein, in the payment of fringe benefit contributions to the Trust Funds set forth in this Article of the Agreement, the Employer shall bear the imputed cost of the audit as set forth below:

$$\frac{\text{total audited deficiency}}{150} \times \text{number of months audited} = \text{imputed cost of audit}$$

Substantially delinquent is defined as any deficiency in the payment of

fringe benefit contributions to the Trust Funds set forth in this Article of the Agreement in excess of 10% of the fringe benefit contributions paid to the Trust Funds set forth in this Article of the Agreement during the period that is the subject of the audit. In the event the Trust Funds set forth in this Article of the Agreement bring an action to recover the imputed costs of audit, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

**e)**  In the event the Employer fails to produce the books and records necessary for an audit as set forth in subsection 17(a) of this Article of the Agreement, the Employer agrees to pay a penalty of $400.00. In the event the Trust Funds set forth in this Article of the Agreement bring an action to obtain an audit of the Employer's books and records, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

**f)**  If after an audit of its books and records the Employer is found to be delinquent in the payment of fringe benefit contributions to the Trust Funds set forth in this Article of the Agreement then the Employer shall pay, in addition to the delinquent fringe benefit contributions, interest on the unpaid amounts from the date due until the date of payment at the rate prescribed under section 6621 of Title 26 of the United States Code. In the event the Trust Funds set forth in this Article of the Agreement bring an action to recover the interest on delinquent fringe benefit contributions, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

**g)**  In the event that formal proceedings are instituted before a court of competent jurisdiction by the Trustees of the Trust Funds set forth in this Article of the Agreement to collect delinquent contributions to such Fund, and if such court renders a judgment in favor of such Fund, the Employer shall pay to such Fund, in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:

    **(1.)**  the unpaid contributions.

    **(2.)**  interest on unpaid contributions determined by using the rate prescribed under section 6621 of Title 26 of the United States Code.

    **(3.)**  interest on the unpaid contributions as and for liquidated damages.

    **(4.)**  reasonable attorneys' fees and costs of the action.

    **(5.)**  such other legal or equitable relief as the court deems appropriate.

**h)**     The Employer hereby agrees that in the event any payment to the Union or to the Trust Funds set forth in this Article of the Agreement by check or other negotiable instrument results in the check or negotiable instrument being returned without payment after being duly presented, the Employer shall be liable for additional damages in the amount of $250.00 to cover such additional costs, charge and expenses. Nothing herein is intended, nor shall be interpreted, to mean that the Trust Funds set forth in this Article of the Agreement or Union waive any other liquidated damages.

**i)**     The President, Vice President, Secretary-Treasurer, individual partner, employee of the partnership, officer, stockholder, proprietor and/or employee of the corporation, company joint venture or proprietorship of the Employer acknowledges that he or she is vested with the authority and control over the submission of reports and/or payment or contributions to the Mason Tenders District Council Trust Funds and acknowledges that he or she shall be personally and individually obligated to submit reports and/or pay the required contributions to Mason Tenders District Council Trust Funds for all work performed by employees within the trade and geographic jurisdictions of the Union. Any Employer whose account with the Mason Tenders District Council Trust Funds is found by the Trustees, upon regular or special audit, to be substantially delinquent, or in case an audit of such books and records is made because of the Employer's failure to complete and file necessary reports and forms in a manner acceptable to the Trustees, may be charged the full cost of such audit and the Trustees of the Mason Tenders District Council Trust Funds shall be empowered to charge interest on delinquent contributions as set forth in subsection (f) of this Section.

**j)**     In the event the Employer does not make the payments to the fringe benefit funds, or remit dues check-offs or MTDCPAC contributions within seven days of the due dates specified in this Article, it is agreed that the Employer shall be liable for an additional payment of twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater, of the amount owing from the close of the day on which any such payment was due to the date when payment is actually made and as for liquidated damages.

**k)**     If an audit of the Employer's books and records is required and a deficiency in fringe benefit fund contributions or remittance of working dues check-offs or MTDCPAC contributions is found which is not paid within seven days after reasonable notice, the Employer agrees to pay as additional liquidated damages twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 of the United States

Code, whichever is greater, of the amount owing from the close of the business of the day on which any such payment was initially due to the date actually paid, plus the cost of all audit, accountants', attorneys' and other fees necessary to effect collection of the deficiency.

**l)**     Where payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the Trustees of the Mason Tenders District Council Fringe Benefit Funds to have the court enter an order permanently enjoining the Employer and its agents, representatives, directors, officers, stockholders, successors and assigns, for the remaining term of this Agreement from failing, refusing or neglecting to submit the required employer remittance reports and/or to pay the required contributions to the Mason Tenders District Council Fringe Benefit Funds, and requiring the Employer to cooperate in an audit in accordance with the provisions of this Agreement. In consideration of this Agreement the Employer represents and warrants that it will not raise any defense, counterclaim or offset to the Trustees' application for this order.

**m)**     All payments of contributions to the Mason Tenders Fringe Benefit Funds shall be paid on a weekly basis for the pay period immediately preceding, in one check to be allocated to the Mason Tenders Benefit Funds in accordance with terms of the Agreement.

**Section 18.—**
When an employee is sent to work by the Employer to a job outside the region where the fare to and from the job by the customary means of travel exceeds $5.00 per day, the Employer shall pay the excess as an addition to the contract wage.

**Section 19.—**
If the Employer requests Mason Tenders to report on any day and such Mason Tenders report for work on that day by starting time, but are not put to work, such Mason Tenders shall be entitled to two hours' pay. However, this payment shall not be made if it is impossible to put such Mason Tenders to work because of weather, lack of materials, or other job conditions beyond the Employer's control.

## ARTICLE VII

**Section 1.—**
The Employer shall provide for the exclusive use of the Mason Tenders on each job on which they are doing work, a suitable tool house three square feet minimum per employee in size, properly heated and lit. The Employer who complies with the requirements of this Section is only

28

29

responsible, upon submission of proper proof of loss, for loss of clothing due to the burning or forcible entry of the tool house.  Such liability shall be limited to a sum not to exceed per employee:

>    $200.00 for an overcoat;
>    $150.00 for clothing, including overalls; and
>    $100.00 for shoes.

Where the Employer requires Mason Tenders to wear clothing on the job site identifying the Employer, such clothing shall also identify the Union by appropriate insignias or other suitable markings.

### Section 2.—

If an emergency arises requiring Mason Tenders to work during inclement weather, foul weather clothing, to include boots, raincoats, and rain hats, shall be furnished without charge to all Mason Tenders.

### Section 3.—

The Employer shall supply all tools on the job required in performing the work covered by this Trade Agreement.  It is agreed that the size of square point shovels shall be Size No. 2 when obtainable but in any case the weight of the shovel shall not exceed five and one-half pounds.

### Section 4.—

Mason Tenders on the job shall wear in plain sight, numbered badges (not to exceed one and one-half inches in diameter) when requested to do so by the Employer; such badges shall be furnished without charge by the Employer.

### Section 5.—

The Employer, Mason Tenders or the agents of either shall not accept or give directly or indirectly, any rebate on wages, or give or accept gratuities, or give anything of value or extend any favor to any person for the purpose of effecting any change in rate of wages.  The Employer or its representatives shall not be permitted to give any advance in wages to Mason Tenders, nor shall they be permitted to lend money to Mason Tenders.

### Section 6.—

a)     In buildings thirteen stories in height and over, an elevator shall be provided to carry Mason Tenders to and from their work during regular hours of employment after the brickwork has reached the twelfth floor.  Consideration shall be given to Mason Tenders working on higher stories if elevator service is not maintained, and a reasonable time shall

30

be allowed to and from work.

b)     In order to establish a maximum weight of material and the barrow to be handled by one laborer, it is agreed that the maximum number of bricks to be placed in or upon a wheelbarrow shall be sixty. In the case of other materials or building units, it is agreed that the combined weights of the materials and the barrow shall not exceed three hundred pounds.  In arriving at weights of various materials, it is agreed that a brick weighs from 4 to 4-1/2 pounds; 1 bag of Portland cement, 94 pounds; 1 bag of hydrated lime, 50 pounds.  The weight of hollow tile and other building units shall be the same as set forth by the manufacturers of these products.  Where the weight of palletized materials is 1500 pounds or more it shall be handled by a minimum of two Mason Tenders when moved by jacks.  The height of palletized materials shall not exceed 5 feet, 6 inches in height.

c)     Any 12 inch cement block raised over 5 feet shall be handled by two Mason Tenders.

### Section 7.—

No provision of this Agreement shall supersede any Municipal, State or Federal law which imposes more stringent requirements as to wages, hours of work, or as to safety, sanitary or general working conditions than are imposed by this Agreement.

### ARTICLE VIII

### Section 1.—

a)     Where Mason Tenders are employed on a job, the Local Union shall designate a Shop Steward who shall be the second Mason Tender on the job.  The Shop Steward shall monitor the Employer's compliance with the terms and conditions of this Agreement.  In the event the Shop Steward becomes aware of non-compliance with this Agreement by the Employer, the Shop Steward shall so inform the Local Union that appointed the Shop Steward.  The Shop Steward shall retain possession of the key to the tool house and see to it that it is open in ample time at starting time and securely locked at quitting time.  The Shop Steward shall perform these duties as shop steward with the least possible inconvenience to the Employer.  The Shop Steward is to work as a Mason Tender and not use the position as Shop Steward to avoid performance of the Shop Steward's duties as a Mason Tender.  On overtime work the Shop Steward shall always be the second Mason Tender offered to work overtime. If the Shop Steward is discharged, the Shop Steward shall at once be reinstated until the matter is brought before the Union and the decision of the Union shall control, and if any time has been lost, the

31

Shop Steward shall be paid for all lost time up to thirty days only. The Shop Steward is to work up to the completion of the job and shall be the last Mason Tender to be discharged. Where more than one Employer does Mason Tender work on a job site, each Employer shall employ Mason Tenders exclusively to perform the work and each Employer shall employ Mason Tender Shop Stewards. The Union shall have the right to remove and replace any Shop Steward.

**b)**      The term "Shop Steward" as used in this Agreement shall mean those Mason Tenders who have been trained and hold a current certification by the Union to serve as shop stewards and have been designated by the Union to serve as such at a job site.

**Section 2.—**
      The Business Agent, Business Manager or other designated representative of the Union shall have the right to visit and go upon the Employer's jobs during working hours and said person shall not be interfered with while making such visits.

**Section 3.—**
      The Employer may select individuals to serve as a Mason Tender Foreman and Mason Tender Assistant Foreman. The Employer shall select whomever the Employer chooses for the positions of  Mason Tender Foreman and Mason Tender Assistant Foreman without regard to the provisions of Article III, Section 2 of this Agreement. The Mason Tender Foreman may be the first Mason Tender hired by the Employer. The Employer may hire a Mason Tender Assistant Foreman in the event there are more than eight Mason Tenders working on the job site. The ratio of Mason Tender Assistant Foremen to Mason Tenders shall not exceed one Mason Tender Assistant Foreman to eight Mason Tenders on any job site. A Mason Tender Foreman shall be required on all jobs where eight or more Mason Tenders are employed. Such foreman shall be representative of the Employer and shall be in direct charge of the Mason Tenders on the job, but shall not perform the work of a Mason Tender. All Mason Tender Foremen shall be paid a weekly salary which shall not be less than $35.00 per day above the prescribed rate for Mason Tenders in this Agreement. Mason Tender Assistant Foremen shall be paid a weekly salary which shall not be less than $25.00 per day above the prescribed rate for Mason Tenders in this Agreement. The Mason Tender Foreman shall take his orders from a supervisor on the job.

**ARTICLE IX**

**Section 1.—**
      The Employer guarantees that there will be no lockouts for any

32

reason during the term of this Agreement and the Union guarantees that there will be no strikes during the term of this Agreement except the Union's right to strike will not be limited:

**a)**      Where the Employer, at any job site, contracts or subcontracts work covered by this Agreement to any other person, firm, partnership, corporation, joint venture or other entity that is not bound by an Agreement with the Union covering such work.

**b)**      Where any of the workers engaged on a construction job perform work covered by this Agreement, including loading materials in building supply yards within the regions defined in Article I and unloading at the point of construction, without receiving compensation equivalent to that provided for Mason Tenders under the applicable Agreement with the Union.

**c)**      When the Union concludes that the Mason Tenders on any job have not been paid, are being paid less than the rate of wages prescribed in this Agreement, or the Employer is in arrears on fringe benefit contributions payable to the Trust Funds set forth in Article VI of this Agreement, or in the remittance of dues checkoffs and/or MTDCPAC deductions to the Union as prescribed in this Agreement or in any modification of this Agreement.

**d)**      When the Union concludes that an Employer has either failed to: i) permit review of its books and records to which the Union and/or Fund's is entitled under this Agreement, including but not limited to the information required to be produced pursuant to Article VI Section 17, ii) post and maintain a bond in the amount and manner required under this Agreement; or iii) maintain unemployment insurance, workers' compensation insurance, and any other legally required insurance, in the amounts and in the manner required by law.

**e)**      When the Union concludes that the Employer has failed to retain a shop steward at the time and in the manner provided in the Agreement; has improperly replaced, dismissed or failed to employ a designated shop steward; or has otherwise failed to permit a shop steward to perform his/her functions and/or exercise his/her rights as provided in this Agreement.

**f)**      When the Union concludes that the Employer has violated the rights of the Union or an employee under Section 7 of the National Labor Relations Act, or has required an employee to work under dangerous or unsafe conditions.

33

**Section 2. –**

It shall not be a violation of this Agreement, cause for discharge or disciplinary action nor shall any employee be permanently replaced, for refusing to enter upon any job site involved in a primary labor dispute, or refusing to cross or work behind a picket line established by any union.

**Section 3.—**

The Union shall not be responsible for any unauthorized strike or its results.

**Section 4.—**

The parties to this Agreement agree that no damages of any kind or nature shall be awarded or allowed against the Mason Tenders District Council of Greater New York and its affiliated locals, or any officer or member thereof by reason of the withdrawal of men from a job on which written notice has been delivered as aforesaid.

## ARTICLE X

**Section 1.—**

The Union may submit disputes arising between the parties involving questions of interpretation or application of any clause of this Agreement (or a previous Agreement to which the Employer was subject) as a grievance under the following rules, except as excluded or limited below.

    **a)**    Grievance Steps.

        Step 1:    The Employer or his representative shall meet with a representative of the Union and attempt to adjust the grievance between them on a job level basis. The parties shall endeavor to meet within 48 hours of the time the dispute becomes known to them.

        Step 2:    Upon receipt of notification from the Local Union Grievance Department, describing the nature of the grievance, the Employer shall either fully and finally resolve the matter or respond in writing within 10 business days stating the reasons why the grievance is disputed. Failure to so respond shall be deemed acknowledgment of the violation stated in the Step 2 notice from the Grievance Department.

        Step 3:    If the matter is not resolved at Step 2, the Union may appeal the dispute to arbitration, by written notice to the Employer.

34

    **a)**    Arbitration. An arbitrator shall be selected from the following rotating panel (in the order in which they herein appear): Joseph A. Harris, William Dicindio, and Arthur Riegal. At the Union's discretion, multiple claims may be heard simultaneously as part of a single consolidated case. Except as specified in subsections (e) and (f) below, the parties shall share equally the arbitrator's fee, the cost, if any, of a hearing room, and the cost, if requested by either party, of translation and/or court reporter services. The Union reserves the right to add to, delete from, or modify the order or composition of the arbitration panel by providing notice via certified mail return receipt requested to the Employer. Any such change shall be deemed effective upon the expiration of ten business days following the Employer's receipt of such notice at its last provided address, unless notice of the Employer's objection to such change is forwarded to the Union by similar means and received within the referenced ten-day period.

    **b)**    Investigations and Witnesses. The Union, in the investigation and/or arbitration of a dispute, may subpoena witnesses and by written request procure the books, records and any other documents of the Employer the Union deems relevant to the investigation or prosecution of the case. The Union shall have the right to demand the production of such records, at any time whether or not a dispute exists, as well as to demand the production of any of the records specified in Article VI Section 17(a) above. In addition to any other remedies, the Union shall have the right, on five days written notice to the Employer, to withdraw Mason Tenders from the jobs of any Employer that fails to provide information to the Union required herein.

    **c)**    Presumptions. In all cases in which the Union proves that an individual or individuals performed work within the jurisdiction of the Union for any period of time, it shall be presumed that all work performed by such individual or individuals fell within the jurisdiction of the Union. It shall also be presumed that if the Employer, in whole or part, maintains or oversees general conditions on a job that it is a general contractor, responsible for any and all subcontracting occurring on the job. It shall be presumed that no third-party entity that is not engaged in construction as its primary business purpose is responsible for the subcontract of work occurring at a site. Further, an adverse inference shall be drawn from any failure by the Employer to timely produce documents required to be provided to the Union in subparagraph b) above.

    **d)**    Right to Strike. No provision of this grievance and arbitration procedure, nor the submission of a dispute for resolution through these procedures shall in any way waive, impair, prejudice or otherwise

35

limit the rights of the Union to strike as permitted under this Agreement.

**e)**    General Remedies. The arbitrator shall have authority to award damages, back-pay, and/or injunctive relief.  If the Employer is found to have violated any of the provisions of this Agreement pertaining to hours, wages or fringe benefits, it shall be required to furnish the Union and Fringe Benefit Funds with a surety bond, in an amount determined by the arbitrator, guaranteeing the payment of all wages and fringe benefits provided by this Agreement.  In any case in which the Employer is found to have failed to pay wages due, or failed to remit dues owed to the Union or contributions owed to the MTDCPAC, the award shall include 1) interest at the prime rate on the day of the award plus two percent, running from the date of the violation; 2) attorneys' fees and expenses (including arbitral fees and expenses) incurred by the Union in pursuing the award; 3) the full cost of the arbitrator's fees and 4) such remedies and penalties as would be available in claims brought under Article 6 of the New York State Labor Laws and/or the Fair Labor Standards Act, if the substantive elements for obtaining additional relief under either or both of those laws is established. The right provided herein to obtain remedies under the New York State Labor Laws and the Fair Labor Standards Act shall not impair the Union or employee's rights to bring suit under such statutes if such relief is not pursued through this arbitration process.

**f)**    Fringe Benefit Contribution Claims (Other Remedies and Issues). The Union shall have the right in any proceeding seeking the payment of fringe benefit contributions to enforce all amounts due to the Funds under this Agreement, including but not limited to those remedies specified in Article VI, Section 17 above, as well as the full cost of the arbitration and the arbitrator's fees. Neither this arbitration procedure nor the submission of a dispute to arbitration, or final disposition of an arbitration, however, shall impair, waive, prejudice or otherwise affect the rights of the Funds to sue and recover for all amounts due under this Agreement, including but not limited to those remedies specified in Article VI, Section 17 above, ERISA and the Funds' governing documents.  The proceedings provided for in this Article need not be exhausted as a condition precedent to the Fund commencing any suit available to it.

**g)**    Status of Certain Issues.  Any and all claims alleging a violation of any of the prohibitions contained in this Agreement regarding the subcontracting of work and/or the establishment or maintenance by the employer or its principals of other business entities, including but not limited to alleged violations of Article II and Article XI Sections 4,5, 6, and 7 of this Agreement, as well as claims, in whole or part, seeking dues, wages, fringe benefit and/or MTDCPAC contributions shall be subject to decision either under this Article, or in federal court, at the discretion of

36

**h)**    Compliance. Any decision of the arbitrator shall be binding upon the parties and shall be complied with by the Employer within five days of the issuance of the award.  In addition to all other rights to withdraw laborers as provided in this Agreement, should any Employer fail to comply with such decision, the Union shall have the right to remove Mason Tenders from such Employer's jobs until the Employer fully complies with the award.

## ARTICLE XI

**Section 1.—**
    It is further agreed by and between the parties hereto that if any Federal or State Court shall at any time decide that any clause or clauses of this Agreement is or are void or illegal, such decisions shall not invalidate the other portions of this Agreement and the remaining portion of this Agreement shall be considered binding between the parties hereto.  Nothing contained in this Agreement shall be construed to deprive any one or more individual Mason Tenders from pursuing whatever civil or criminal remedies they may have under the law for the collection of their wages, or any part thereof.

    If any provision of this Agreement shall be adjudged illegal or ineffective, such adjudication shall not invalidate any other portions of this Agreement nor relieve either party from their liabilities and obligations under this Agreement.  Further, the provision held to be illegal or invalid shall be given the meaning and be deemed replaced by whatever lawful substitute provision provides the most comparable protection to the Union and/or Mason Tenders.  Upon the request of the Union, the parties shall promptly execute an amendment to the Agreement providing the precise terms of such legal substitute provision.

**Section 2.—**
    If during the term of this Agreement, the Union and any Employer Association now in agreement with the Union further modify their existing Agreement with respect to wages, hours, work included, or fringe benefits, or any other provision, the undersigned Employer shall be bound, at the request of the Union, to said modification.

**Section 3.—**
    The Employer agrees that within forty-eight hours after the execution of this Agreement, it will submit to the Union a schedule setting forth in full each member of the Employer's firm, partnership or corpora-

37

tion, giving the name and address and any future change therein, and if it is a corporation, the names and addresses of all officers and directors and possible partners; if a trade name, the name and address of the individual doing business under the trade name.

**Section 4.—**

The Employer further agrees that it will immediately notify the Union in writing of any change in its membership, setting forth the names and addresses of those members which may have dropped out or been suspended from the firm, partnership or corporation and in case of any change in personnel of any of its members, if it is a corporation, to give the names of the new officers, if it is a partnership, to give the names of the new partners, and in case of a new firm doing business under a trade name, the name of the new principal. The Employer, whether as an individual, partner or employee of a partnership, or as an officer, director, stockholder or employee of a corporation, agrees to remain bound by the terms and conditions of this Agreement although doing business as an individual under another trade name, or as a partner or employee of another partnership or as an officer, director, stockholder, partner, or employee of another corporation or as a joint venturer.

**Section 5.—**

This Agreement shall apply to and bind the parties hereto, their successors and assigns, and any successor thereto resulting from a merger, consolidation or other reorganization or restructuring, and if the Employer is a corporation, the individual members and principals jointly and severally with the corporation.

**Section 6. –**

The Employer and all other persons or entities related to the Employer who are bound by this Agreement agree that they will not enter into any agreement or arrangement inconsistent with Article XI, Section 5 above or that would otherwise establish or create a successor that has not assumed all obligations and responsibilities of the Employer under this Agreement. The Employer further agrees to provide the Union no fewer than thirty (30) days notice in advance of the consummation of any transaction that would create a successor, including material financial details.

**Section 7.—**

a)    When the Employer subcontracts or sublets any work of any type or kind whatsoever coming within the jurisdiction of the Union, the Employer shall be responsible for the subcontractor complying with all provisions of the Agreement. If the Employer subcontracts or sublets any work of any type or kind whatsoever coming within the jurisdiction of the

38

Union, the Employer shall be responsible for the payment of wages, contributions to the Mason Tenders District Council Trust Funds, MTDCPAC contributions and working dues check-offs by such subcontractor, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

b)    All of the terms, covenants and conditions of the Agreement, and without limitation, the specific provisions of this section, shall be applicable for the duration, and during the entire term of the Agreement, regardless of any change in the status of the Employer, as for example, the Employer joining, during the term of the Agreement, an employer association.

c)    The Employer agrees that it will cause any other corporation or company which may now or hereafter exist or be formed or in which the Employer may have any interest to be bound by this Agreement and operate in accordance with its terms, if such subsidiary is engaged in any work covered by the Agreement.

d)    If the Employer is contracted, retained or employed to oversee, manage, perform or in any way be responsible for work of any kind covered in whole or in part by this Agreement on a job site as a construction manager the Employer shall employ a Shop Steward for the job site. It is expressly agreed by all Parties to this Agreement that the Shop Steward shall be employed by the Employer on all job sites even though the Shop Steward may be the only person hired to perform Mason Tender work for the Employer. The Shop Steward shall perform all work described in Article IV of this Agreement as well as all necessary duties without inconvenience to the Employer. The Shop Steward shall be employed from the inception of any work whatsoever on new construction at the street level of the job site and shall be employed until the completion of all work on the job site. The Employer agrees not to proceed with any said construction manager work until it assumes the responsibility for compensation for the Shop Steward.

**ARTICLE XII**

This Agreement shall become effective and binding upon the parties hereto on the 1st day of July, 2002, and remain in full effect through June 30, 2005, and shall renew from year to year thereafter unless either party hereto shall give written notice to the other of its desire to modify, amend, or terminate this Agreement. Such notice must be given in writing delivered by certified mail, postage prepaid, at least sixty days, but not more than ninety days, before the expiration date of this Agreement. In

39

the event either party gives written notice of its desire to terminate, modify or amend this Agreement pursuant to this Article, the Agreement, with the exception of any and all prohibitions contained herein on the right to strike, shall remain in effect past the expiration date and the conditions established by the Agreement maintained until such time as impasse is reached and declared as defined under the National Labor Relations Act.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed this day and year by their duly authorized officers, and represent to each other that they were duly authorized to enter into this Agreement. **The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this Agreement** and he warrants and represents that he has authority to bind the Employer and the principals or members thereof.

Signed by both parties hereto as of the 1st day of July 2002 at New York, New York.

_Aurora Contractors Inc._
Print Firm Name

By:

_100 Raynor Avenue_                    _[signature]_
Street Address                          Company Officer Signature

_Ronkonkoma, NY 11779_                 _Joseph Koslow_
City, State, Zip Code                   Print Name of Officer

_081-981-3785 3738_                     _Vice President_
Area Code and Telephone Number/Fax Number    Title of Officer

_11-2608171_
Federal Tax ID #


MASON TENDERS DISTRICT COUNCIL
OF GREATER NEW YORK & LONG ISLAND
32 West 18th Street, 8th Floor
New York, New York 10011

By: _[signature]_
ANTHONY SILVERI, Business Manager

40

41

# EXHIBIT 2

# MILMAN LABUDA LAW GROUP PLLC

3000 MARCUS AVENUE
SUITE 3W8
LAKE SUCCESS, NEW YORK 11042

**CORRECTION LETTER**

TELEPHONE (516) 328-8899
FACSIMILE (516) 328-0082

Author: Robert F. Milman - Member
E-Mail Address: rob@mllaborlaw.com
Direct Dial: (516) 303-1400

May 12, 2015

Joseph Bianca, Field Representative
Mason Tenders' District Council Local 79
520 8th Avenue, 6th Floor
New York, NY 10011

Re:   Aurora Contractors Inc.

Dear Mr. Bianca:

I am writing this letter on behalf of **Aurora Contractors, Inc.**  This letter will serve to revise the letter sent by my office to you on April 30, 2015.  As you are aware, in January 2015, I met with you and Frank Vero Jr. to discuss Aurora Contracting Inc. decision to utilize ABZ Contracting for purposes of providing labor to **Aurora Contractors, Inc.**

Subsequently, ABZ Contracting Inc. signed a Collective Bargaining Agreement with Laborers Local 79 and provides **Aurora Contractors, Inc.**  with its manpower.  As such **Aurora Contractors, Inc.** no longer employs laborers directly.

The last fully executed agreement between **Aurora Contractors, Inc.** and Laborers Local No. 79 expired on June 30, 2014 and has continued from that date on a year to year basis unless either party hereto gives sixty (60) day notice, to the other before any annual renewal that it desires to terminate the agreement.  Given that **Aurora Contractors, Inc.** no longer employs any laborers, this letter will serve to inform you that **Aurora Contractors, Inc.**  will not be renewing its Collective Bargaining Agreement effective July 1, 2015.

Very truly yours,

Milman Labuda Law Group PLLC

Robert F. Milman

RFM:ps

cc:   Frank Vero Sr.
      Frank Vero Jr.

NEW YORK NY 100

12 MAY 2015 PM

$ 000.48°
02 1P
0003213903   MAY 12 2015
MAILED FROM ZIP CODE 11042

MILMAN LABUDA LAW GROUP PLLC
3000 MARCUS AVENUE
SUITE 3W8
LAKE SUCCESS, NEW YORK 11042

Joseph Bianca, Field Representative
Mason Tenders' District Council Local 79
520 8th Avenue, 6th Floor
New York, NY 10011

10018355S 0046

# EXHIBIT 3

# MILMAN LABUDA LAW GROUP PLLC

3000 MARCUS AVENUE
SUITE 3W8
LAKE SUCCESS, NEW YORK 11042

---

TELEPHONE (516) 328-8899
FACSIMILE (516) 328-0082

Author: Robert F. Milman - Member
E-Mail Address: rob@mllaborlaw.com
Direct Dial: (516) 303-1400

April 30, 2015

Joseph Bianca, Field Representative
Mason Tenders' District Council Local 79
520 8th Avenue, 6th Floor
New York, NY 10011

**Re:    ABZ Contracting Inc.**

Dear Mr. Bianca:

I am writing this letter on behalf of ABZ Contracting Inc. As you are aware, in January 2015, I met with you and Frank Vero Jr. to discuss Aurora Contracting Inc. decision to utilize ABZ Contracting for purposes of providing labor to ABZ Contracting Inc.

Subsequently, ABZ Contracting Inc. signed a Collective Bargaining Agreement with Laborers Local 66 and provides ABZ Contracting Inc. with its manpower. As such ABZ Contracting Inc. no longer employs laborers directly.

The last fully executed agreement between ABZ Contracting Inc. and Laborers Local No. 66 expired on June 30, 2014 and has continued from that date on a year to year basis unless either party hereto gives sixty (60) day notice, to the other before any annual renewal that it desires to terminate the agreement. Given that ABZ Contracting Inc. no longer employs any laborers, this letter will serve to inform you that ABZ Contracting Inc. will not be renewing its Collective Bargaining Agreement effective July 1, 2015.

Very truly yours,

Milman Labuda Law Group PLLC

Robert F. Milman

RFM:ps

cc:    Frank Vero Sr.
       Frank Vero Jr.

MILMAN LABUDA LAW GROUP PLLC
3000 MARCUS AVENUE
SUITE 3W8
LAKE SUCCESS, NEW YORK 11042

Joseph Bianca, Field Representative
Mason Tenders' District Council Local 79
520 8th Avenue, 6th Floor
New York, NY 10011



UNITED STATES POSTAGE
$ 000.48⁰
PITNEY BOWES
02 1P          $ 000.48⁰
0003213903   APR 30 2015
MAILED FROM ZIP CODE 11042

# EXHIBIT 4



# CONSTRUCTION AND GENERAL BUILDING LABORERS' LOCAL 79

July 1, 2020

**ANTHONY VITA**
*President*

**JOHN NORBURY**
*Vice President*

**JOSEPH CESTARO**
*Recording Secretary*

**KENNETH BRANCACCIO**
*Secretary-Treasurer*

**MICHAEL PROHASKA**
*Business Manager*

**BARRIE SMITH**
*Sergeant-at-Arms*

**LUIS MONTALVO**
*Auditor*

**ANTHONY WILLIAMSON**
*Auditor*

**KENNETH ROBINSON, JR.**
*Auditor*

**JOSE ANDINO**
*Executive Board Member*

**CHAZ RYNKIEWICZ**
*Executive Board Member*

Aurora Contractors Inc.
100 Raynor Avenue
Ronkonkoma, NY 11779

Attn: Frank Vero

Grievance: Aurora Contractors Inc.
Date of Violation: 6/25/2020 – Ongoing
Job Site: 333 Johnson Avenue

Dear Gentlemen:

Please be advised that Local 79 recently filed a grievance against **Aurora Contractors Inc** for back wages. The provisions violated include the following:

1 – Article 2 – Sec. 1: (The Employer shall not enter into a contract with any other person, firm, partnership, corporation or joint venture employing Mason Tenders to perform bargaining unit work as defined in Article IV of this Agreement on the same job site, unless such other person, firm, partnership, corporation or joint venture is bound by an Agreement with the Union.) **"Alba Demolition"**

2 – Article 2 – Sec. 2: (If the Employer contracts out or sublets any work coming within the jurisdiction of the Union as defined in Article IV, the Employer shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof.)

3 – Article 3 – Sec. 2: (Failed to provide written notification to Union Hiring hall /failed to comply with the employer/union appointment ratio requirement) **"5 Non Union Laborers"**

Because the Union's attempts to resolve this grievance at Step 1 of the Grievance Procedures have been unsuccessful, Local 79 hereby invokes Step 2 of the Grievance Procedure.

Thank you in advance for your prompt attention to this matter.

Sincerely,

Jasmine Perdomo
Grievance Department Head



131 WEST 33ᴿᴰ STREET, 7ᵀᴴ FLOOR, NEW YORK, NY 10001
PHONE: (212) 465-7900 • FAX: (212) 465-7947 • E-MAIL: kb@local79.org
www.local79.org

# EXHIBIT 5

```
----------------------------------------------------X
```
Construction and General Building Laborers'
Local 79

        -against-                            NOTICE OF INTENTION
                                            TO ARBITRATE

Aurora Contractors, Inc.
```
----------------------------------------------------X
```

To:     Aurora Contractors, Inc.
          100 Raynor Ave.
          Ronkonkoma, NY 11779

       Please be advised that Construction and General Building Laborers' Local 79 (the Union), hereby demands arbitration with respect to the following controversy:

*Whether Aurora Contractors, Inc. has violated the Collective Bargaining Agreement by, including but not limited to, allowing Alba Services Inc., a non-union subcontractor, to perform bargaining unit work at the jobsite located at 333 Johnson Avenue. If so, what should be the remedy?*

Dated: New York, NY
       July 14, 2020

                                  By:    /KS
                                        Mason Tenders District Council
                                        Tamir W. Rosenblum, Esq.
                                        Haluk Savci, Esq.
                                          520 Eighth Avenue
                                        Suite 650
                                        New York, NY 1001

VIA CERTIFIED & REGULAR MAIL